Syllabus.

# Richmond.

## WARE v. BANKERS LOAN AND INVESTMENT CO, & ANOTHER.

### MARCH 17, 1898.

Absent, Riely and Cardwell, JJ.

1. APPEAL AND ERROR—*Amount in Controversy.*—The amount in controversy in this cause as to the appellee is the difference between the amount claimed by the appellee on the date of the decree appealed from, and the amount for which a decree was rendered in favor of the appellee.

2. USURY—*By What Law Determined.*—Whether a contract is 'usurious or not is to be determined by the law of the place with reference to which the contract is to be performed. Although money is loaned in Virginia, and a bond therefor is executed in Virginia, and it is secured by a deed of trust on real estate situated in Virginia, yet if the bond is in good faith payable in New York, it will be deemed to be a New York contract and governed by the laws of that State as to its validity, interpretation, and effect. Where the principal of a bond is payable to a corporation "at its office in the city of New York," and the premiums and dues thereon are payable "at its office," the latter expression will be deemed to be applicable to its New York office, though it may have other offices in this State and elsewhere.

3. USURY—*How Far Contracts Scrutinized—Proof of Usury—Contracts Solvable in Another State—Evading Usury Laws.*—While it is still the rule in this State, notwithstanding the mitigation of the penalties for usury, that the ingenuity of man cannot devise a scheme by which a usurious transaction can be shielded from the scrutiny of the courts, yet proof of the usury must be clear and satisfactory. A New York corporation doing business in Virginia and elsewhere, and entering into contracts within its chartered powers which are valid according to the laws of New York, though usurious according to the laws of Virginia, cannot be held to be seeking to evade the usury laws of Virginia simply because it requires its contracts to be performed in the State of New York. This cannot be said to be a mere device to evade the usury laws of Virginia.

Appeal from a decree of the Circuit Court of the city of Roanoke, pronounced March 16, 1897, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Scott & Staples,* for the appellant.

*Cocke & Glasgow,* for the appellees.

KEITH, P., delivered the opinion of the court.

This suit was begun in the Circuit Court of the city of Roanoke by J. M. Ware to enjoin the sale of certain real estate conveyed by him to secure the Bankers Loan and Investment Company the payment of a bond with collateral condition for the sum of $1,500. In the Circuit Court the appellee recovered $1,114.70, with interest, from the 18th of May, 1896; and thereupon Ware applied for and obtained an appeal from one of the judges of this court.

The appellee, under rule IX., asks to have the errors committed against it corrected in this court.

The first question to be considered is whether the appellee brings it within the jurisdiction of this court to grant the relief asked for. The decree of the court below, principal and interest, on the day upon which it was rendered, amounted to $1,170.40. The property was advertised to be sold for the payment of a debt, ascertained as of the 30th of April, 1895, of $1,462.46. To this the Circuit Court should have added, according to the contention of the appellee, premiums and interest from the 30th day of April, 1895, to the 16th day of March, 1897, $330, making an aggregate of $1,792.46, from which deduct the decree given by the Circuit Court, and the sum of

$622.06 is the sum put in controversy under rule IX. by the cross-appeal.

The Circuit Court held that the contract entered into was a Virginia contract, and usurious. The contention here is that it was a New York contract valid, according to the laws of that State. The bond was given by James M. Ware, of the city of Roanoke, to the Bankers Loan and Investment Company, a corporation incorporated under the laws of the State of New York, in the penal sum of $3,000, to be paid to the said company, its officers, or assigns at the office of the company in the city of New York. The condition of this obligation is that Ware, having obtained a loan of $1,500 by way of anticipation of the value of fifteen shares of the capital stock of the company, had thereby become liable, in accordance with the articles and by-laws of said company, to pay a premium of 50 cents per share per month, and the monthly instalment of interest, making premium and interest $15.00 per month during the continuance of the loan, which he had bound himself to pay.to the company, its successors, or assigns, "at its office."

If Ware performed all the various conditions required of him according to the tenor and effect of his bond until the fifteen shares of stock became fully paid, and of the value of $100 per share, then the obligation entered into was to be void, otherwise to remain in full force and effect. The $1,500 advanced was paid to the obligee in Virginia, and its payment was secured by a lien upon real estate in Virginia.

In the case of *Crabtree* v. *Old Dominion Building and Loan Association*, just decided (*ante*, p. 670), we reached the conclusion that under the laws of this State dealings like those disclosed by the record between Ware and the Building Association are usurious, unless authorized by a charter granted by the legislature. It was there declared that the theory of a partnership among the members of a Building Association could not be invoked to sanction practices otherwise usurious, and the authority of the case of *Silver* v. *Barnes*, 6 Bing. (N. C.) 180, and of the courts

which followed that decision, was denied.   It is also decided in
that case that the Act of 1893-4, p. 560, had no retroactive
operation which would validate what had been done by Building.
Associations previous to its passage.

In the case of *Building Association* v. *Ashworth*, 91 Va. 706,
the opinion of Judge Buchanan deals with a contract en-
tered into with a corporation organized under the laws of the
State of New York, as is the case here.   There, too, the money
for the loan of which the bond was given was paid to the obligee·
in the State of Virginia, and its repayment was secured by a
deed of trust upon realty in this State.   It there appears that the·
contract was concluded in Virginia, and all the papers with re-
spect to it executed and delivered here.   The bond, however,
and all interest, monthly premiums, and dues were payable at the·
office of the Association in New York.   The court held that it
was a New York contract, and as such was to be governed by
the laws of the place of performance, without regard to the place
at which it was written, signed, and dated, with respect to its·
nature, interpretation, validity, and effect.   1 Dan. Neg. Ins.,
sec. 865; and *Andrews* v. *Pond*, 13 Peters 65.

It is claimed, however, by this appellant that the premiums·
and dues were not by his contract payable in the city of New
York.   The principal of the loan is declared in terms to be pay--
able to the company "at its office in the city of New York,"
while, in the condition of the bond, all premiums and dues are·
made payable to the company "at its office," an expression
which it is claimed applies as well to its office in the city of
Roanoke as to its office in the city of New York.   We do not
think that the instrument bears any such construction.   Hav-
ing spoken of "its office in the city of New York," a subsequent
reference "to its office" could only refer by fair and natural
interpretation to the New York office.   It is true that the com-
pany had an office in Roanoke, as it appears to have had else-
where, at which payments could be made and receipts given for
premiums and dues, but this was a mere matter of convenience—

of convenience alike to the company and its members. It was not a part of the contract, and can have no influence in determining its character, or place of execution.

In *Nickels* v. *Building Association*, 93 Va. 380, the money was received by Nickels and expended upon the improvement of real estate in Virginia, where he resided; but the by-laws of the Association required the payments to be made to the secretary of the Association at its principal office in Geneva, N. Y. Nickels, as a member of the Association, was held to have notice of this by-law; and it was further held that where parties enter into a contract lawful in New York and usurious in Virginia, the presumption is that they contracted with reference to the laws of that State which recognized the legality of the transaction.

Men are presumed in their contracts to respect rather than to violate the law.

Appellant contends that the naming of New York as the place where the contract should be performed was a mere shift to evade the usury laws of this State. There is no artifice which the ingenuity of man can conceive by which a usurious transaction can be shielded from the scrutiny of the courts; but they do not lightly impute the vice of usury to a contract. It is forbidden by the law, and severe penalties are imposed upon those who practice it; but while the courts will be hindered in their search by no device, however ingenius, the proof of usury must be clear and satisfactory. *Brockenbrough* v. *Spindle*, 17 Gratt., at page 33. In that case Judge Moncure says, "that to convict a person of usury it must be proved beyond a rational doubt to the contrary." That decision was rendered when the law avoided an usurious contract, and, the penalty under the present law being less severe, it is claimed that the proof exacted should be less cogent. The character of the transaction is unchanged. It is still a violation of the law visited by penalties identical in kind, though differing in degree, from those imposed under former statutes. The rule of evidence, therefore, remains un-

changed and the proof of usury must still be clear and satis-
factory.

As we have seen, no device however specious can hinder an
inquiry by the court into the true nature and character of the
transaction. If, then, a contract made in this State is by agree-
ment of the parties to be performed elsewhere, and the court
should be satisfied that the place of performance had been se-
lected as a mere shift to evade the usury laws of this State, it
would be stripped of its disguise, and subjected to the penalties
which the law denounces against the offence. But a New York
association, organized under the laws of that State, authorized
by its charter and by-laws to enter into the contract under inves-
tigation, and capable of contracting in any jurisdiction, whether
the rate of interest in the place of contract be greater or less
than is allowed by the laws of New York, cannot be deemed to
have selected that State, the State by which it was created, and
where it is domiciled, as the place where its contract should be
performed as a shift to evade the usury laws of this State, not,
at least, without convincing proof of the fact.

Upon the authority of *Building Association* v. *Ashworth,* 91
Va. 706, and *Nickels* v. *Building Association,* 93 Va. 380, be-
fore cited, we are of opinion that the contract in this case was en-
tered into with reference to the state of New York as the place
of performance; that the evidence does not prove that the place
of performance was determined upon as a shift or device to
cloak an usurious transaction; and that, under the laws of the
state of New York, the contract between the appellant and ap-
pellee was not usurious.

Having reached this conclusion, it is unnecessary to consider
the errors assigned by appellant.

An order will be entered reversing the decree of the Circuit
Court for error to the prejudice of the appellee, and remanding
the cause for further proceedings in accordance with the prin-
ciples declared in the foregoing opinion.

*Reversed.*