# MICHAEL W. SKINNER, ET AL.

## V.

# CEN-PEN CORPORATION, ET AL.

Record No. 910714

February 28, 1992

Present: All the Justices

*Oldric J. LaBell, Jr.* for appellant.

*Harold O. Telstad (Short, Short, Telstad & Kerr*, on brief), for appellees Cen-Pen Corporation and Carrithers' Realty Company.

(Richard M. Maculuso), for appellee Donald R. Carrithers.

JUSTICE WHITING delivered the opinion of the Court.

This usury case involves a creditor's use of a so-called "wrap-around" note to increase its interest rate and loan charges.

On January 4, 1984, Michael W. Skinner and Sharon A. Skinner (the Skinners), whose residence was encumbered by a first deed of trust, talked to Donald R. Carrithers about arranging a loan for them and paid Carrithers Realty Company $750 as a "mortgage fee" to obtain the loan. Donald R. Carrithers apparently arranged to have Cen-Pen Corporation (Cen-Pen) make the loan.

On February 10, 1984, the Skinners signed a $50,000 bearer note, secured by a second deed of trust upon their residence, in return for an advance of $4,298.18 made by Cen-Pen on that day. The bearer note was payable in 122 monthly installments of

$589.24 each and bore a stated interest rate of 13-¼% per annum. Cen-Pen was the holder of the note until it was paid.

The note required Cen-Pen to transmit $472.31 of the Skinners' monthly payments to the first deed of trust note holder to pay their monthly payments on that note. Cen-Pen was then to apply the balance of $116.93 to the monthly payments of principal and interest on its note. The note provided that "the Noteholder has not assumed any of [the Skinners'] liabilities or obligations to the holder of the Prior Note, or given that holder any additional rights or affected [the Skinners'] liability under the Prior Note and the Prior Deed of Trust."

If the amount Cen-Pen actually lent to the Skinners was $50,000, then the effective interest rate was stated correctly in the note as 13-¼%. But if the amount actually lent was $4,298.18, then the effective interest rate was 31.22%, although that rate was not stated in the note.

The Skinners refinanced Cen-Pen's note and deed of trust by obtaining a loan from Essex Industrial Loan Association (Essex). On May 17, 1985, Essex paid Cen-Pen $6,565.25 to release its second deed of trust. A portion of that payment was interest on the $50,000 Cen-Pen note.

On April 23, 1987, the Skinners sued Cen-Pen, Carrithers Realty Company, and Donald R. Carrithers, alleging that they were all involved in this allegedly usurious transaction. In their law action, the Skinners sought to recover all "interest and illegal charges" paid to Cen-Pen, as well as a judgment for a statutory penalty of twice the usurious interest paid. The Skinners also asked for additional relief against all three defendants in an equity suit that they filed on May 15, 1987.

On December 16, 1987, the cases were consolidated and heard by the court on December 14, 1990. After the Skinners presented their evidence, the trial court sustained a defense motion to strike the Skinners' evidence. The record does not reveal the grounds of the motion, and the dispositive ruling from the bench was as follows:

> The evidence indicates here that the plaintiff had been bankrupt. He was out seeking a loan. He had some difficulties securing a loan. We have him meet up with an investor who's willing to take a risk, certainly makes a profit, but I think it's permitted by law. I see no reason why there is any equitable

ground to overturn this sort of transaction and there is no law prohibiting it and as far as the Court is concerned, I think this type of transaction is currently permitted under the law and I am, therefore, going to grant the defendants' motion.

The Skinners appeal. They claim that because the annual interest rate and the "mortgage fee" exceed those authorized by statute, the rate and fee are usurious. Accordingly, the Skinners argue that they are entitled to recover not only the usurious charges, but also a statutory penalty. They contend further that the trial court should have granted other relief against Cen-Pen and the other defendants as a consequence of the usurious loan. Because the trial court confined its summary judgment ruling to the usury issue, we do not rule upon any of the other issues raised in this appeal.

First, we decide whether the Cen-Pen loan was usurious. In doing so, we consider those statutes in effect when the loan was made and paid.

■ Unless the transaction was authorized by some other statute, Code § 6.1-330.11 prohibited a lender from charging more than eight per cent interest per annum "for the loan . . . of money." Cen-Pen maintains that Code § 6.1-330.16(F) authorized this loan. This statute provided in pertinent part that

> [a]ny loan secured by a subordinate mortgage or deed of trust on such residential real estate where the interest is charged at a simple interest rate on the unpaid balance *stated therein* may be lawfully enforced at the interest rate stated therein on the principal amount of the loan . . . contracted to be lent . . . . Notwithstanding the foregoing, a service charge not exceeding two per centum of the *amount of the loan* may also be imposed.

(Emphasis added.)

■ The defendants contend that this loan was not usurious because the interest Cen-Pen collected was at the stated rate of 13-¼% of the principal amount of $50,000, the stated amount of the Skinners' loan. In usury cases, however, we are not bound by the contractual recitations; on the contrary, we look behind the formal documents to discover the true nature of the transaction. *Heubusch* v. *Boone*, 213 Va. 414, 420-21, 192 S.E.2d 783, 789

(1972); *Ware* v. *Bankers Loan and Inv. Co.*, 95 Va. 680, 684, 29 S.E. 744, 745 (1898).

Nevertheless, the defendants contend that Cen-Pen's agreement to transmit the Skinners' monthly payments to the holder of the first deed of trust (the so-called "wrap-around" feature of Cen-Pen's second deed of trust) transformed what would seem to be a loan of $4,298.18 into a loan of $50,000. The defendants cite no authority, and we find none, to support this argument.

■ In our opinion, the clerical responsibility undertaken by Cen-Pen (for which it apparently assessed an additional $3 monthly "collection fee") does not convert a $4,298.18 loan into one for $50,000. Rather, the true nature of the transaction was a $4,298.18 loan bearing an effective interest rate of 31.22%. This rate was not stated in the note, as required by Code § 6.1-330.16(F); hence, Cen-Pen's annual interest charge exceeded the maximum authorized interest rate of 8% by 23.22%.

Next, we consider the remedy.

Code § 6.1-330.46 provided in pertinent part that

[i]f an excess beyond the rate of interest permitted by the applicable statute be paid in any case for the loan . . . of money, the person paying the same may in a suit or action brought within two years from the time the usurious transaction occurred recover twice the total of the interest paid from the person taking or receiving the same.[*]

The defendants contend that the transaction, if usurious, occurred on February 10, 1984, when the Cen-Pen loan was made. Because the Skinners did not file their action until April 23, 1987, the defendants claim that the two-year limitation period of Code § 6.1-330.46 bars any recovery of the usurious interest.

■ To resolve this issue, we first consider a predecessor statute of limitation for the recovery of payments of usurious interest. As pertinent, it provided that:

If any excess beyond the lawful interest be paid in any case, the person paying the same may, in a suit brought within one year *thereafter*, recover it from the person with whom the contract was made or to whom the assurance was given.

---

* Code § 6.1-330.46 was repealed in 1987. Acts 1987, c. 622. The present statute is Code § 6.1-330.57.

Code § 2823 (1888) (emphasis added).

Construing and applying Code § 2823, we have treated *each* payment of an installment of interest as a usurious transaction and permitted actions seeking recovery of all usurious interest paid within the year preceding the filing of the action. *Washington Nat'l Building and Loan Ass'n* v. *Wendling*, 102 Va. 279, 283, 46 S.E. 296, 297 (1904); *Munford* v. *McVeigh*, 92 Va. 446, 466, 23 S.E. 857, 864 (1896). Because the Skinners brought their action within two years of Essex's payment of May 17, 1985, which included usurious interest, the time limitation of Code § 6.1-330.46 does not bar the Skinners' claim.

Even so, Cen-Pen argues that this claim is limited to recovery of usurious interest payments made within two years of the filing of the Skinners' action. On the other hand, the Skinners claim that they are entitled to recover all the interest they paid, including the allegedly usurious "mortgage fee," even though those sums were paid more than two years before they filed their action to recover such payments. Thus, we must decide, (1) for what period the Skinners may assert their claim, and (2) what sums can be claimed during that period.

Where a debtor has consented to his creditor's application of the usurious interest payments to the interest obligation, the debtor's recovery is limited to those payments made within the statutory period described in Code § 6.1-330.46. *Wendling* at 282, 46 S.E. at 297; *Munford* at 466, 23 S.E. at 864 (construing a predecessor statute to Code § 6.1-330.46).

Here, the Skinners agreed in the note that "[t]he noteholder will apply my payments first to pay any interest I owe and then to principal." Furthermore, the evidence indicated that the Skinners' $750 check was in specific payment of the usurious "mortgage fee" and that Cen-Pen applied the Skinners' remaining payments first to payment of interest. Because the Skinners acquiesced in Cen-Pen's application of all their interest payments and of the "mortgage fee," Code § 6.1-330.46 limits the computation of any recovery to amounts paid within the two-year period next preceding the filing of the Skinners' action.

Code § 6.1-326 (1966 Repl. Vol.) provided in pertinent part:

If an excess beyond the lawful interest be paid in any case for the loan or forbearance of money or other thing, the person paying the same may in a suit or action brought within

one year thereafter recover the full amount of *such payment* from the person with whom the contract was made or to whom the assurance was given.

(Emphasis added.) In 1968, Code § 6.1-326 was amended by the adoption of Code § 6.1-330.46, *supra*, Acts 1968, c. 741.

Obviously, there is a difference between a recovery of the full amount of "such payment [of usurious interest]" as provided in Code § 6.1-326 and "twice the total of the interest paid" as provided in Code § 6.1-330.46.

We regard as significant the statutory change which deleted the words "such payment" and substituted therefor an independent provision describing the amount of recovery without the previous statutory limitation to the usurious interest paid. In our opinion, this evidenced a legislative intent to permit a recovery of twice the amount of *all* interest paid, lawful as well as usurious, within the two-year statutory period.

For all these reasons, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*